BOWENS v CITY OF PONTIAC

Docket No. 96213. Submitted November 17, 1987, at Detroit. Decided January 4, 1988.

Robert Bowens, an elected city commissioner of the City of Pontiac, was the subject of a criminal complaint in the 48th District Court alleging that Bowens conspired to violate state gambling laws and of a federal indictment alleging that Bowens conspired to conduct an illegal gambling operation and obstruct state law enforcement. Bowens hired legal counsel to represent him and the charges in both the state and federal courts were dismissed. Bowens then sought to have the City of Pontiac pay his legal expenses, contending that he was acting within the scope of his duties as a commissioner and in the best interests of his district when he engaged in the activities which led to his being charged with the crimes. The city refused to pay the legal expenses. Bowens then filed suit against the City of Pontiac in Oakland Circuit Court seeking payment of the expenses. The court, David F. Breck, J., directed the city to pay $50,000 to plaintiff, finding that plaintiff acted reasonably, in good faith, and for a public purpose in his actions concerning the numbers racket, that plaintiff had been faced with an emergency in immediately requiring the services of a skilled criminal attorney, and that there was a public benefit in plaintiff's successful defense against the criminal charges. The court concluded that the city abused its discretion in failing to pay plaintiff's attorney fees. Defendant appealed.

The Court of Appeals held:

Where it is factually demonstrated that pressing necessity or emergency conditions warrant a municipal official in employing legal counsel in a matter of official, public concern and legal services are provided without consent of the governing body,

REFERENCES

Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions. § 208.

Doctrine of apparent authority as applied to agent of municipality. 77 ALR3d 925.

Validity and construction of statute authorizing or requiring governmental unit to indemnify public officer or employee for liability arising out of performance of public duties. 71 ALR3d 90.

the courts may hold a municipal corporation liable for such legal services. There is no clear error in the trial court's findings of fact nor in its conclusion that defendant abused its discretion.

Affirmed.

SHEPHERD, J., concurred but wrote separately to emphasize that this holding must be limited to circumstances where the public official was engaged in activities specifically relating to his or her public duties.

MUNICIPAL CORPORATIONS — MUNICIPAL OFFICIALS — LEGAL SERVICES.

A municipal official, upon demonstrating pressing necessity or emergency conditions, may secure legal counsel in matters of official public concern without the consent of the governing body; under such circumstances, the municipal corporation may be held liable for such legal services.

*Law Firm of Hatchett, De Walt, Hatchett & Hall* (by *Marvin R. Smith*), for plaintiff.

*Sullivan, Ward, Bone, Tyler, Fiott & Asher, P.C.* (by *Michael J. Walter* and *Ronald A. Weglarz*), for defendant.

Before: D. F. WALSH, P.J., and SHEPHERD and A. T. DAVIS,* JJ.

D. F. WALSH, P.J. Defendant City of Pontiac appeals from the order of the Oakland Circuit Court directing defendant to pay $50,000 to plaintiff Robert Bowens. The judgment represents the amount of attorney fees incurred by plaintiff in his successful defense against a state charge of conspiracy to violate gambling laws and federal charges of conspiracy to conduct an illegal gambling operation and to obstruct state law enforcement. At all relevant times plaintiff was an elected city commissioner representing district one in the City of Pontiac. On appeal, defendant claims that the court erred in entering judgment in favor of plaintiff. We disagree.

* Circuit judge, sitting on the Court of Appeals by assignment.

In *Messmore v Kracht,* 172 Mich 120, 122; 137 NW 549 (1912), the Supreme Court cited the following rule with approval:

> "It is within the discretionary power of a municipality to indemnify one of its officers against liability incurred by reason of any act done by him while in the bona fide discharge of his official duties, and the municipality has the right to employ counsel to defend the officer, or to appropriate funds for the necessary expenses incurred by him in such defense, or pay a judgment rendered against him." 28 Cyc p 454.

The Supreme Court in *Messmore* found that it was within the discretion of the county board of supervisors to reimburse a deputy sheriff for legal expenses incurred by him in successfully defending himself against claims of malicious prosecution and abuse of process, said claims having arisen out of actions taken by the sheriff in the performance of his duties. In *Sonnenberg v Farmington Twp,* 39 Mich App 446; 197 NW2d 853 (1972), this Court extended the *Messmore* ruling to reimbursement for attorney fees sustained in the successful defense of criminal charges arising out of and in the course of municipal employment. 39 Mich App 449.

In *Exeter Twp Clerk v Exeter Twp Bd,* 108 Mich App 262; 310 NW2d 357 (1981), this Court, citing *Messmore,* discussed the discretionary nature of a municipality's decision concerning reimbursement of an official's legal expenses. 108 Mich App 268-269. The Court stated:

> Where it is factually demonstrated that pressing necessity or emergency conditions warrant a municipal official in employing legal counsel in a matter of official, public concern and legal services

are provided without consent of the governing body, the courts may hold a municipal corporation liable for such legal services.

\* \* \*

While a municipal corporation clearly has the discretion to determine whether an official may be indemnified for legal expenses incurred in the faithful discharge of his or her duties, it may constitute an abuse of discretion, as in this case, to refuse to provide legal representation or to indemnify the official for legal expenses incurred where pressing necessity or emergency conditions require legal representation. [108 Mich App 269-270, 272.]

See also *City of Warren v Dannis,* 136 Mich App 651, 659; 357 NW2d 731 (1984), lv den 422 Mich 932 (1985), where this Court observed:

On the issue of the defendant's right to reimbursement of attorney fees, our appellate courts have long tried to consider the need for public officials to reasonably exercise their discretion in what they in good faith believe is the exercise of the powers and responsibilities of their office. Sometimes this requires legal advice and assistance in this modern world of ours so full of litigation. The courts have likewise been concerned with officials who obstinately in bad faith and without good reason set themselves contrary to and above the law and then require public funds for their defense. There must be a fine balance line between these positions.

In this case, the trial judge found that, as a city commissioner, plaintiff was obligated to listen to constituents' complaints and to do what he legally could to preserve law and order. The judge further found that the mayor had encouraged plaintiff to learn more about the problem of violence connected with the illegal numbers racket being operated in plaintiff's district. Given the "caliber" of

plaintiff's district, plaintiff's sincerity in wanting to avoid a gang war, and the mayor's encouragement, the judge found that plaintiff acted reasonably, in good faith and for a public purpose in meeting with Michael Ferrilli and Big John Andrews concerning the numbers racket. It was that meeting with Ferrilli, who was later revealed to be an undercover police agent, which gave rise to the two criminal proceedings against plaintiff. The trial judge also found that plaintiff had been faced with an emergency in immediately requiring the services of a skilled criminal attorney. Finally, the judge found that there was a public benefit in plaintiff's successful defense against the criminal charges. The judge thus concluded that defendant abused its discretion in failing to pay plaintiff's attorney fees.

We are persuaded of no clear error in the trial judge's findings of fact. MCR 2.613(C). Based on those findings, and on the authority cited *supra,* we find no error in the judge's conclusion that defendant abused its discretion.

Affirmed.

A. T. DAVIS, J., concurred.

SHEPHERD, J. *(concurring).* I concur in the result but write separately to emphasize that this holding must be limited to circumstances where the public official was engaged in activities specifically relating to his or her public duties. In situations where the public official is charged with a criminal offense arising out of the exercise of such public duties it would only be an abuse of discretion to refuse to pay attorney fees where the criminal charges are subsequently determined to be without foundation. In this case it would not have been within the normal duties of a city commissioner to

engage in law enforcement activities. However, he was encouraged to do so by the mayor, who does have a law enforcement function. Therefore, when he met with the individuals named in the majority opinion he was performing duties that were appropriate to his office. When at least one of those individuals falsely accused him of participating in a criminal conspiracy, he was faced with an emergency and had to defend himself and I agree that it was an abuse of discretion for the city to fail to pay his attorney fees once it was finally determined that the charges were false.