**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 18, 2005**

STEPHEN W. WARDA,

    Plaintiff-Appellee,

v                                                    No. 125561

CITY COUNCIL OF THE CITY OF
FLUSHING AND CITY OF FLUSHING,

    Defendants-Appellants.

_____

**BEFORE THE ENTIRE BENCH**

**MARKMAN, J.**

The question presented in this case is whether, pursuant to MCL 691.1408(2), Michigan courts possess the authority to review a city council's discretionary decision to grant or deny reimbursement of private attorney fees incurred by a city police officer. Because the city council's decision under this statute constitutes a discretionary act of a separate branch of government, the judiciary is without authority to review it. Accordingly, we reverse the judgment of the Court of Appeals and remand

this matter to the circuit court for entry of an order dismissing plaintiff's claims.

## I. Facts and Procedural History

Plaintiff was a Flushing police officer for approximately twenty years. Early in his career, at the suggestion of the chief of police, plaintiff obtained special training from the Secretary of State that certified him to inspect "salvage vehicles."[1] Plaintiff's employer paid for the training, and plaintiff received his regular pay while he attended the salvage vehicle inspection course.

At all times relevant to this case, an inspection fee of $25 was established by statute. MCL 257.217c(7). On the occasions that plaintiff conducted inspections in Flushing, plaintiff turned over this fee to the city, which deducted taxes and then remitted the balance to plaintiff along with his regular pay. On those occasions plaintiff conducted inspections outside Flushing, neither the police department nor the city of Flushing received any part of

---

[1] MCL 257.217c concerns the acquisition and transfer of distressed vehicles. In general, a seriously damaged vehicle (i.e., a "distressed vehicle" as defined by MCL 257.12a) must be issued a salvage certificate of title. The process of obtaining such a title requires an inspection and certification of certain matters by a specially trained officer. The specially trained officer must be a police officer and must be certified by the Secretary of State. MCL 257.217c(25), (26). The Secretary of State is responsible for overseeing the conduct of specially trained officers, and may suspend, revoke, or deny an officer's certification. MCL 257.217c(26).

the associated fees.  Plaintiff conducted the vast majority of his inspections outside his regular duty shift hours. Plaintiff characterized his inspection work as "moonlighting" and as providing "supplementary income."

On March 2, 1992, plaintiff completed two inspection reports related to salvage vehicle inspections he conducted in Macomb County.[2]  In these reports, plaintiff verified that certain repairs had been made when in fact they had not, and declared that the vehicles were roadworthy when in fact they were not.  Following a criminal investigation, plaintiff was charged in April 1994 with false certification, a felony.  MCL 257.903.  The city discharged plaintiff on May 25, 1994, for violating department rules and regulations, including misconduct and lying about the inspections to a Michigan State Police investigator. However, in June 1997, a jury in Macomb County acquitted plaintiff of the criminal charge of false certification.

Subsequently, plaintiff requested payment of $205,000 from defendant for attorney fees incurred in defending the criminal charges.  Plaintiff cited MCL 691.1408(2) as a basis for the city to reimburse such fees.  By a resolution adopted at a meeting on September 8, 1997, the city council denied this request; it reiterated its position in a resolution adopted on June 22, 1998.  The two resolutions

_____

[2] The city of Flushing is located in Genesee County.

3

explained that plaintiff's request for fees was denied because plaintiff's actions that had resulted in the fees were not for any "public purpose" of the city of Flushing and fell outside the scope of plaintiff's employment with the city.

Plaintiff filed the instant complaint for declaratory relief and a motion for summary disposition, contending that the city abused its discretion in denying his request for attorney fees. Following a two-day bench trial in October 2001, the trial court found that: (1) while performing salvage vehicle inspections, plaintiff was acting in the course of his duties as a Flushing police officer; (2) the city council did not "offer one credible or acceptable reason" for denying plaintiff's fee request; and (3) a reasonable attorney fee was $109,200.

In a divided opinion, the Court of Appeals affirmed. Unpublished opinion per curiam, issued December 23, 2003 (Docket No. 241188). The majority concluded that the circuit court had not clearly erred in finding that plaintiff acted within the scope of his employment when he inspected salvage vehicles, or in finding that the city abused its discretion when it denied plaintiff reimbursement of his attorney fees. The dissenting judge would have reversed, concluding that the circuit court had clearly erred in finding that plaintiff's work as a salvage

4

vehicle inspector fell within the scope of his employment as a Flushing police officer.

We granted oral argument on whether to grant defendants' application for leave to appeal pursuant to MCR 7.302(G)(1), and directed the parties to include among the issues briefed "whether the city council's decision is subject to judicial review." *Warda v Flushing City Council*, 471 Mich 907 (2004).

## II. Standard of Review

This dispute requires us to determine whether the judiciary has the authority pursuant to the Constitution and MCL 691.1408(2) to review the city council's denial of plaintiff's request for reimbursement. We review these issues de novo. *Lapeer Co Clerk v Lapeer Circuit Judges,* 465 Mich 559, 566; 640 NW2d 567 (2002); *Jeffrey v Rapid American Corp,* 448 Mich 178, 184; 529 NW2d 644 (1995).

## III. Analysis

The question presented here concerns the extent to which the decision of a municipality to deny reimbursement for attorney fees under MCL 691.1408(2) is subject to judicial review. Michigan has long recognized that a municipality may indemnify a police officer for costs, including attorney fees, incurred because of the discharge of the officer's official duties. *Messmore v Kracht*, 172 Mich 120, 122; 137 NW 549 (1912). This principle is

5

reflected in § 8 of the governmental immunity act, MCL 691.1408. As for the costs incurred by an officer in defending a criminal action based on conduct of the officer in the course of his employment, MCL 691.1408(2) provides:

> When a criminal action is commenced against an officer or employee of a governmental agency based upon the conduct of the officer or employee in the course of employment, if the employee or officer had a reasonable basis for believing that he or she was acting within the scope of his or her authority at the time of the alleged conduct, the governmental agency *may* pay for, engage, or furnish the services of an attorney to advise the officer or employee as to the action, and to appear for and represent the officer or employee in the action. An officer or employee who has incurred legal expenses after December 31, 1975 for conduct prescribed in this subsection may obtain reimbursement for those expenses under this subsection. [Emphasis added.]

For purposes of the statute, "governmental agency" is defined as "the state or a political subdivision." MCL 691.1401(d). "Political subdivision" is further defined:

> "Political subdivision" means a *municipal corporation*, county, county road commission, school district, community college district, port district, metropolitan district, or transportation authority or a combination of 2 or more of these when acting jointly; a district or authority authorized by law or formed by 1 or more political subdivisions; or an agency, department, court, board, *or council of a political subdivision*. [MCL 691.1401(b) (emphasis added).]

Thus, the Flushing city council constitutes a "governmental agency" for purposes of the governmental immunity act.

The use of the word "may" in § 8 makes clear that the decision to pay an officer's attorney fees is a matter left

to the discretion of the municipality. Further, we note that the statute does not limit or qualify the word "may" (with, for instance, a requirement of reasonableness) or provide any other standards by which that discretion is to be exercised. As such, the Flushing city council had full discretion under MCL 691.1408(2) in choosing whether to reimburse plaintiff's attorney fees.

The question, then, is the nature of this Court's power to review a purely discretionary action taken by a governmental agency. In *Veldman v Grand Rapids*, 275 Mich 100; 265 NW 790 (1936), we were faced with the question whether the plaintiffs, a group of Grand Rapids taxpayers, could sue to prevent the city's purchase of a power plant, where such purchase had been approved by that city's legislative body, the city commission. This Court observed:

> If the city commission had legal authority to do what it did do, that ends the matter. The question of whether the commissioners acted wisely or unwisely is not for the consideration or determination of this court.
>
> * * *
>
> If the charter of the city of Grand Rapids is constitutional, and of this there seems to be no question, and the State has thus conferred upon the city commission the power which it exercised and left the exercise of it to the judgment and discretion of the commissioners, then their action is conclusive. [*Id.* at 112-113.]

In the instant case, the state, through § 8 (the constitutionality of which has not been challenged), has clearly "conferred upon the city [council] the power which it exercised and left the exercise of it to the judgment and discretion" of the city council. *Veldman, supra* at 113. While the statute affords the city council the discretion to decide whether to reimburse a claim for attorney fees, the statute says nothing about the limits within which that discretion is to be exercised, let alone by which an appellate court would be guided in its review of a decision made pursuant to that discretion. As such, the Flushing city council's action to deny reimbursement of attorney fees is conclusive. Whether the council acted wisely or unwisely, prudently or imprudently, is not for the consideration or determination of this Court.[3]

---

[3] We stress that this opinion only precludes the judiciary from reviewing the *discretionary* decision-making of legislative and executive agencies. Where decision-making falls outside the scope of such discretion, such decision-making would be fully subject to judicial review.

For instance, MCL 691.1408(2) confers discretionary decision-making authority on a governmental agency if three criteria are met: (1) a criminal action has been commenced against an employee; (2) the criminal action is based on the conduct of the employee occurring in the course of employment; and (3) the employee has a reasonable basis for believing that he or she was acting within the scope of his or her authority at the time of the conduct. If any of these three criteria are not satisfied, a legislative or executive agency would lack the statutory discretion to award attorney fees. Therefore, if a legislative or executive agency chose to award attorney fees to a nonemployee, for example, the discretion afforded the

8

As a result, we see no need to take sides in the matter addressed and resolved, both by the trial court and the Court of Appeals, regarding whether plaintiff's work as a salvage vehicle inspector fell within the scope of his employment as a Flushing police officer.

The following passage from *People v Gardner*, 143 Mich 104, 106; 106 NW 541 (1906), succinctly summarizes both the role of the judiciary and the appropriate form of relief available to a plaintiff in a matter of this sort:[4]

> "The general rule is well established that courts will not inquire into the motives of legislators where they possess the power to do the act, and it has been exercised as prescribed by the organic law. In such case the doctrine is that the legislators are responsible alone to the people who elect them. And this principle is generally applied to purely legislative acts of municipal corporations." [Citation omitted.]

---

agency under MCL 691.1408(2) would not preclude the courts from reviewing such a decision, because the preconditions giving rise to the discretionary authority would not have been met.

[4] In the past this Court has considered whether such discretionary actions are subject to judicial review and have concluded that they are not. See, e.g., *Schwartz v City of Flint*, 426 Mich 295, 305-313; 395 NW2d 678 (1986). These cases are predicated on the doctrine of separation of powers that is set forth in Const 1963, art 3, § 2, which provides that "[t]he powers of government are divided into three branches: legislative, executive and judicial," and further provides that "[n]o person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." We have recognized that the doctrine of the separation of powers applies to municipalities when exercising the powers delegated to them by the Legislature pursuant to Const 1963, art 7, §§ 21 and 22.

9

So long as the power to govern the city and control its affairs is vested by the people of Flushing in an elected city council, neither this Court nor any other may assume to direct the local policy of the city of Flushing. See *Veldman*, *supra* at 111; *Huse v East China Twp Bd*, 330 Mich 465, 470-471; 47 NW2d 696 (1951). Here, the city council concluded that the reimbursement of plaintiff's attorney fees would not serve the "public purposes" of the city of Flushing, and chose not to reimburse such fees. While such a decision might be one with which reasonable people would disagree, its wisdom is ultimately to be judged by the voters of the city of Flushing, and not by the judiciary of this state. Accordingly, because the statute provides no limits within which the city council's discretion is to be exercised, let alone by which an appellate court would be guided in its review of an exercise of that discretion, MCL 691.1408(2) affords plaintiff no basis for relief.[5]

Moreover, in enacting MCL 691.1408(3), which precludes governmental liability under this act, the Legislature demonstrated an appreciation of this limitation on judicial

---

[5] Plaintiff here does not identify any other statute pertinent to defendants that would render their conduct either illegal or ultra vires. See *People v Ford*, 417 Mich 66, 91; 331 NW2d 878 (1982). Obviously, the fact that one statute does not render conduct unlawful does not mean that another statute may not do so.

10

power.  MCL 691.1408(3), then, is not inharmonious with the separation of powers considerations that we have set forth.

However, while we conclude that there is no statutory basis for our review of the city council's decision, that conclusion does not end the inquiry.  Even a discretionary action of a governmental agency must still comport with the constitutions of this state and the United States.  As we have noted elsewhere:

> [T]he power of judicial review does not extend only to invalidating unconstitutional statutes or other legislative enactments, but also to declaring other governmental action invalid if it violates the state or federal constitution.  [*Sharp v City of Lansing*, 464 Mich 792, 810-811; 629 NW2d 873 (2001).]

The decisions of a governmental agency, for example, to award attorney fees on the basis of race, religion, or nationality might implicate the equal protection guarantees of the federal and state constitutions, while decisions influenced by corruption might implicate the due process guarantees of these same constitutions.  See *Huse, supra* at 470-471.

However, plaintiff here does not suggest that the city council's decision was unconstitutional in any way.  Nor is there any evidence in the record that would suggest such unconstitutionality.  Rather, the record reflects that the city council was faced with a discretionary decision that required it to choose among several permissible outcomes,

11

and it chose accordingly.  The gravamen of plaintiff's argument is simply that he is unhappy with the option the city council selected.  Yet his dissatisfaction, however reasonable to this Court, does not call into question an otherwise valid decision of a governmental agency.[6]  Where,

---

[6] While the exercise of discretion at issue here (a city council resolution) was legislative in nature, our holding extends equally to encompass discretionary actions undertaken by the executive branch in the absence of a guiding standard.  In *Sutherland v Governor*, 29 Mich 320, 321 (1874), the Governor was empowered by statute to issue a certificate of approval "when he shall be satisfied that certain work has been done in conformity with the law."  The parties performing the work brought a mandamus action to compel the Governor to issue such a certificate.  This Court declined, for lack of jurisdiction, to entertain the application for mandamus.  We observed:

> The law must leave the final decision upon every claim and every controversy somewhere, and when that decision has been made, it must be accepted as correct. The presumption is just as conclusive in favor of executive action as in favor of judicial.  The party applying for action, which, under the constitution and laws, depends on the executive discretion, or is to be determined by the executive judgment, if he fails to obtain it, has sought the proper remedy and must submit to the decision.  [*Id.* at 330-331.]

See also *Midland Co Bd of Supervisors v Auditor General*, 27 Mich 165, 166 (1873) ("the exercise of an official discretion belonging to an executive department of the State government, is not subject to review judicially, and cannot, therefore, be examined upon *certiorari* from this Court").

Where the executive carries out a function that is part of the inherent executive power and for which there are no constitutional or other standards, the judiciary is equally without power to review executive action.  See, e.g., *United States v Curtiss-Wright Export Corp*, 299 US 304, 320; 57 S Ct 216; 81 L Ed 255 (1936) (noting that the President's inherent power to handle international

12

as here, a statute empowers a governmental agency to undertake a discretionary decision, and provides no limits to guide either the agency's exercise of that discretion or the judiciary's review of that exercise, the decision is not subject to judicial review absent an allegation that the exercise of that discretion was unconstitutional.

In reaching a contrary conclusion, the Court of Appeals relied on *Exeter Twp Clerk v Exeter Twp Bd*, 108 Mich App 262; 310 NW2d 357 (1981), and *Bowens v City of Pontiac*, 165 Mich App 416; 419 NW2d 24 (1988). In *Exeter,* a township clerk hired private counsel in connection with a primary election after the township attorney declined to advise her on the legality of certain nominating petitions. When the township board refused to reimburse the clerk for

---

relations "does not require as a basis for its exercise an act of Congress, but . . . must be exercised in subordination to the applicable provisions of the Constitution"); *Cunningham v Neagle*, 135 US 1; 10 S Ct 658; 34 L Ed 55 (1890).

Where an executive branch action constitutes action taken pursuant to a legislative grant of authority and in accordance with standards set forth by the Legislature—a realm of action that encompasses virtually all administrative agency actions—it would normally be subject to judicial review. In such cases, there would be a legislatively set standard that a court of law would apply in reviewing such an action. See *Dep't of Natural Resources v Seaman*, 396 Mich 299, 308-309; 240 NW2d 206 (1976).

her attorney fees and costs, she filed a mandamus action to obtain reimbursement under MCL 691.1408.[7]

The *Exeter* panel recognized that there were "no statutory guidelines demonstrating any legislative intent to answer the question of legal fee indemnification or reimbursement," and no cases directly on point. *Exeter, supra* at 268. The panel also recognized the wide discretion afforded to a municipality under the statute:

> [A] municipality, such as a township, in general possesses the discretion to determine whether (1) counsel for the township shall represent a township official sued in his or her capacity, (2) to approve retention of private counsel paid for by the township, (3) to indemnify the official for expenses incurred in defending the action, including attorneys fees, or (4) the township board may decline to provide legal representation or indemnification for such official. [*Id.* at 269.]

However, in spite of this recognition, the *Exeter* panel disregarded the latitude statutorily afforded to the

---

[7] We note that while plaintiff in the instant case did not label his complaint as one for mandamus, he was in essence seeking a writ of mandamus from the circuit court to compel the city council to pay him his attorney fees. However, a writ of mandamus will be issued only where a plaintiff can prove that he has a "'clear legal right to performance of the specific duty sought to be compelled' and that the defendant has a 'clear legal duty to perform such act . . . .'" *In re MCI Telecom Complaint*, 460 Mich 396, 442-443; 596 NW2d 164 (1999) (citation omitted). While this rule may have prompted the Court in *Exeter* to create its "pressing necessity" exception, there is simply no statutory basis for such an exception. Accordingly, because MCL 691.1408(2) provides only that a governmental agency "may" reimburse attorney fees, plaintiff has not shown that he had a "clear legal right" to reimbursement, nor that the city council had a "clear legal duty" to reimburse him. *In re MCI, supra.*

14

municipality. The panel overlooked the fact that MCL 691.1408 provided no guidance regarding what standards an appellate court might employ in reviewing the township's decision; instead, it simply reviewed the decision for an abuse of discretion. *Id.*

The *Exeter* panel then proceeded to create a "pressing necessity" exception from statutory language, MCL 691.1408, that contained no such exception:

> Where it is factually demonstrated that pressing necessity or emergency conditions warrant a municipal official in employing legal counsel in a matter of official, public concern and legal services are provided without consent of the governing body, the courts may hold a municipal corporation liable for such legal services. [*Exeter, supra* at 269-270.]

The Court of Appeals later extended this exception to apply to legal expenses incurred in the course of defending criminal charges. In *Bowens*, *supra*, a city councilman who went "undercover" to investigate illegal gambling within his district was wrongly implicated in a gambling enterprise, and incurred legal expenses defending against the resulting criminal charges. The Court of Appeals concluded that the plaintiff acted reasonably, in good faith, and for a public purpose in doing what he did, and that the *Exeter* exception applied because the "plaintiff had been faced with an emergency in immediately requiring the services of a skilled criminal attorney." *Bowens, supra* at 420.

15

We believe that the Court of Appeals panels in *Exeter* and *Bowens* misapprehended the limited role afforded to the judiciary in cases involving discretionary decisions of a governmental agency. To the extent that MCL 691.1408(2) sets forth no limits on the exercise of a governmental agency's discretion to reimburse attorney fees, it concomitantly sets forth no standards by which the decision of such agency can be reviewed meaningfully by the judiciary. The exercise of the "judicial power" by this Court, Const 1963, art 6, § 1, contemplates that there will be standards—legally comprehensible standards—on the basis of which agency decisions can be reviewed. Whether such standards consist of the provisions of the constitution, or the provisions of other pertinent laws, a judicially comprehensible standard is required in order to enable judicial review.[8] Here, there is no such standard. As a result, there is no basis upon which a court of law can properly review the actions of defendants under MCL 691.1408(2). Absent a comprehensible standard, judicial review cannot be undertaken in pursuit of the rule of law, but only in pursuit of the personal preferences of

---

[8] Cf. *Baker v Carr*, 369 US 186, 217; 82 S Ct 691; 7 L Ed 2d 663 (1962)(referring in the context of the political question doctrine to the impropriety of courts resolving matters in which there is a "lack of judicially discoverable and manageable standards").

16

individual judges. The latter pursuit falls outside the "judicial power" in Michigan.

The Court of Appeals, relying on *Exeter* and *Bowens*, erred in concluding that decisions made pursuant to MCL 691.1408(2) are reviewable under an abuse of discretion standard. Absent a showing that the governmental agency exercised its discretion in an unconstitutional manner, the courts are without the power to review such decisions. Accordingly, we overrule *Exeter* and *Bowens*.

Because the Court of Appeals erred in reviewing the discretionary decisions involved in *Exeter* and *Bowens*, it follows that the exceptions to MCL 691.1408(2) the Court invented as a product of such review are also erroneous. However, even if the governmental agency decisions in those cases had been properly subject to judicial review, the exceptions invented therein still cannot stand. MCL 691.1408(2) specifies that a "governmental agency *may* pay for, engage, or furnish the services of an attorney . . . ." It says nothing about "pressing necessity" or "emergency." Where statutory language is clear, "'no further judicial construction is required or permitted, and the statute must be enforced as written.'" *Gladych v New Family Homes, Inc*, 468 Mich 594, 597; 664 NW2d 705 (2003)(citation omitted). Because the exceptions adopted in *Exeter* and *Bowens* not only lack a statutory basis but

17

also violate the clear language of MCL 691.1408(2) that a government agency "may" reimburse attorney fees, those exceptions cannot stand.

## IV.  Conclusion

Because MCL 691.1408(2) places the decision whether to reimburse the attorney fees at issue within the discretion of the Flushing city council, the legislative branch of the local government, the judiciary is not empowered to review such decision absent a constitutional violation or other illegality.  Where a statute permits a governmental agency to undertake a discretionary decision, and provides no limits to guide either the agency's exercise of that discretion or the judiciary's review of that exercise, the decision is not subject to judicial review absent an allegation that the exercise of discretion was in some way unconstitutional.  To the extent that they are contrary to this rule, the Court of Appeals decisions in *Exeter* and *Bowens* are overruled.

The decision of the Court of Appeals is reversed. This matter is remanded to the circuit court for entry of an order dismissing plaintiff's claims.

Stephen J. Markman<br>
Clifford W. Taylor<br>
Maura D. Corrigan<br>
Robert P. Young, Jr.

18

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

STEPHEN W. WARDA,

    Plaintiff-Appellee,

v                                                         No. 125561

CITY COUNCIL OF THE CITY OF
FLUSHING AND CITY OF FLUSHING,

    Defendants-Appellants.

_____

WEAVER, J. (*dissenting*).

    I would grant leave to appeal in this case rather than issue a final opinion at this time.  This case is currently before the Court on an application for leave to appeal. The Court ordered oral arguments to help it decide if it should grant leave, deny leave, or take some peremptory action.

    In its opinion, the majority addresses the broad question of judicial power, an issue raised by the Court, not the parties.  Such an important and far-reaching question should not be decided without granting leave to appeal and receiving the benefit of full oral argument and full briefing, including inviting amicus briefing.

    In granting leave to appeal, I would also ask the parties to address whether the plaintiff has a legal remedy

under MCL 691.1408, or whether subsection 3 of the statute prohibits the imposition of liability on a governmental agency for a decision made pursuant to subsection 2. MCL 691.1408, at the time applicable here, stated in relevant part:

> (2) When a criminal action is commenced against an officer or employee of a governmental agency based upon the conduct of the officer or employee in the course of employment, if the employee or officer had a reasonable basis for believing that he or she was acting within the scope of his or her authority at the time of the alleged conduct, the governmental agency may pay for, engage, or furnish the services of an attorney to advise the officer or employee as to the action, and to appear for and represent the officer or employee in the action. An officer or employee who has incurred legal expenses after December 31, 1975 for conduct prescribed in this subsection may obtain reimbursement for those expenses under this subsection.

> (3) *This section shall not impose any liability on a governmental agency*. [Emphasis added.]

Thus, the question would be whether the Legislature has specifically provided that a suit seeking to impose on a governmental agency liability based on MCL 691.1408, such as the suit here, could not be brought.

> Elizabeth A. Weaver
> Michael F. Cavanagh
> Marilyn Kelly

2